Filed 11/29/23  P. v. Shirley CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARKIS CAPRICE DEWAYNE SHIRLEY,<br><br>    Defendant and Appellant. | A165769<br><br>(Humboldt County<br> Super. Ct. Nos.<br>CR2101816 &<br>CR2101667) |

Defendant Markis Caprice Dewayne Shirley (appellant) appeals from a judgment of conviction and a third-strike sentence imposed after a jury found him guilty of burglary, possession of a firearm by a felon, and assault.  He contends:  (1) the trial court erred by rejecting a proposed plea bargain in the middle of the trial; (2) his motion to represent himself, which he brought after the trial began, should have been granted under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*); (3) his trial attorney provided ineffective assistance of counsel by not objecting to certain testimony; (4) he should not have been punished for both burglary and possession of a firearm under Penal Code section 654;[1] (5) his motion to strike his prior strike convictions should have been granted under section 1385, subdivision (a); (6) his lawyer was

---

[1]    Except where otherwise indicated, all statutory references are to the Penal Code.

ineffective for not seeking dismissal of his enhancements for prior serious felonies (§ 667, subd. (a)) under section 1385, subdivision (c); and (7) one of those two enhancements should have been stricken because they arose out of the same prior proceeding. We will vacate one of the section 667 enhancements and affirm the judgment in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

In June 2021, appellant was charged in case No. 2101667 with first degree robbery in concert with two or more other persons (§§ 211, 212.5, subd. (a), 213, subd. (a)(1)(A); count 1), first degree burglary (§§ 459, 460, subd. (a); count 2), assault with a semiautomatic firearm (§ 245, subd. (b); counts 3 & 4), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5). The Information alleged that appellant personally used a firearm during the commission of counts 1 and 2. (§§ 12022.5, subd. (a), 12022.53, subd. (b).) It also alleged that appellant had two prior serious felony convictions (§ 667, subd. (a)(1)) that were strikes under section 667, subdivisions (b)–(i). The matter proceeded to a jury trial.[2]

### A. Trial Evidence

Amanda G. testified that she and her boyfriend, J.L., were staying at a Motel 6 in Eureka on November 3, 2020. In the early morning, J.L.'s friend, Josie Craig, arrived at their motel room and asked to "hangout." At some point, Craig left the room for a few minutes and returned. Craig left the room a second time, stating she was receiving a phone call, and left the door ajar. Very soon thereafter, appellant and Tavin Evans pushed their way into

---

[2]    After jury selection began, appellant sought new counsel and then asked to represent himself. Those requests were denied. After the prosecution's case, appellant accepted the terms of a plea bargain that the prosecutor had offered before trial. The trial court rejected the plea bargain. We discuss these issues later in the opinion.

the room through the open door.  Appellant and Evans each had a semiautomatic firearm.

Appellant pushed J.L. against a wall and "pistol whipped" him at least 12 times.  J.L. had bloody gashes on the back of his head and neck.  Amanda G. tried to help J.L., but Evans hit her in the back of the head with his gun.  Evans grabbed Amanda G.'s purse, dumped it out, and took a baggie of marijuana and $100.  Evans and appellant left the room.  Amanda G. later called Eureka Police Detective Jonathan Eckert, with whom she had previously worked as a confidential informant.

Detective Eckert testified that he received the call from Amanda G. on November 5, 2020, and collected surveillance video from the Motel 6.  The camera outside Amanda G.'s and J.L.'s room showed Craig going inside, coming out, and going back inside.  As Craig entered the room the second time, appellant and Evans crouched nearby, wearing sunglasses, face masks, and hoods over their heads.  When Craig left the room again with the door ajar, Evans and appellant rushed in.  Appellant had his hand in his jacket in a position consistent with pulling out a gun.

The video showed Evans and appellant leaving the room a few minutes later and running to a silver Honda SUV parked on the street in front of the motel.  Craig, waiting in the driver's seat, drove appellant and Evans from the motel.

On November 8, 2020, Arcata Police Officer Joseph Rodes observed a silver Honda Pilot that had been reported stolen.  Officer Rodes conducted a felony car stop and detained appellant, who was driving.  During a search of the vehicle, Officer Josh Phinney found a black Bersa .380-caliber semiautomatic firearm under the driver's seat.  Craig, the registered owner of the Pilot, came to the scene with another man to collect the vehicle.

On November 11, 2020, Eureka Police Officer Spencer Barnett conducted another vehicle stop on the silver Honda Pilot because Craig had a warrant for her arrest. Evans was driving, and Craig was the passenger. Evans also had an arrest warrant. After arresting Craig and Evans, Officer Barnett located a loaded semiautomatic firearm behind the front passenger seat.

The prosecution played recordings of phone calls appellant made from the Humboldt County Correctional Facility to his mother. In one call, appellant admitted going into Amanda G.'s and J.L.'s motel room. He said he "beat up" on J.L. but "we never touched" Amanda G. In another call, appellant said: "You feel me I—I—I'm admitting to—I'm admitting to going in there looking for [my] pistol and my clothes, we ended up getting my pistol—you feel me and that's about it—you feel me? I beat—I beat—we beat up on cuz—yeah we beat up on him. Yeah I beat up on him. Yeah that— that's what we did do—you feel me? But you're gonna get me for assault— okay I'll take that—run it concurrent with my pistol charge you feel me? I got a pistol charge I'm going down with hard with. So that I know—assault— assault doesn't mean nothing to me . . . you feel me?"

B. <u>Verdict and Sentence</u>

In September 2021, the jury found appellant guilty of first degree burglary (count 2) and possession of a firearm by a felon (count 5). The jury found the firearm enhancement on count 2 not true. The jury found appellant not guilty on both counts of assault with a semiautomatic firearm (counts 3 and 4) but guilty of the lesser included misdemeanor assault (§ 240)

on count 3.[3]  The jury could not reach a verdict on the robbery charged in count 1, as to which the trial court declared a mistrial.

In March 2022, appellant pleaded guilty in case No. 2101816 to possession of a controlled substance in custody (§ 4573.6) on the condition that the sentence would run concurrent to the sentence in case No. 2101667.

In July 2022, the trial court sentenced appellant to an aggregate term of 30 years to life.  Appellant timely appealed.

## II.  DISCUSSION

### A.  *Faretta* Motion

Appellant contends the trial court erred in denying his motion for self-representation under *Faretta, supra,* 422 U.S. 806, after trial began.  His argument is unpersuasive.

#### 1.  Background

During jury selection, appellant moved for new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  Outside the prosecutor's presence, appellant complained that his attorney was being "allowed to excuse jurors [that appellant] may not want him to excuse."  The trial court explained to appellant that the law allowed the prosecutor to excuse jurors he might not want counsel to excuse, and that the court could excuse jurors for cause and hardship and appellant's counsel "doesn't have much of a choice about that."  The court further explained that once peremptory challenges started, appellant could give his attorney input on which jurors to exclude, although the ultimate tactical decision would rest with counsel.  Appellant responded, "I will fire him, and I will go by myself."

---

[3]  During closing argument, the prosecutor acknowledged there was insufficient evidence to prove count 4.  The jury left blank the lesser-included verdict form for that count.

5

The trial court found no cause to relieve counsel. The court stated: "We haven't even started exercising peremptory challenges yet. We haven't even started. Once we get started, I expect the two of you will consult about it, and he may very well agree with you on all of those. [¶] If you have some sincere concerns when we get into or through the peremptory challenge process, then you can certainly raise that with me again." The court denied the *Marsden* motion without prejudice.

The next day, outside the presence of the jury, the prosecutor advised the trial court of a jail call in which appellant expressed interest in representing himself or finding a new attorney. The prosecutor was concerned "about the defendant's right to represent himself or to have counsel of his own choosing."

The trial court summarized for the record the prior day's *Marsden* hearing and appellant's request for self-representation. The court then made "a specific finding that the [*Faretta*] motion is untimely," citing *People v. Windham* (1977) 19 Cal.3d 121 (*Windham*) and *People v. Lynch* (2010) 50 Cal.4th 693 (*Lynch*), because the attorneys declared they were ready for trial, counsel were in fact prepared for trial, and "we are in the midst of jury selection" on the second day of jury voir dire. As a "sidenote," the court observed that jury selection during the COVID pandemic was particularly difficult and substantial effort had been expended to acquire a jury since appellant had not waived time. As for the criteria for handling untimely *Faretta* motions under *Windham*, the court noted that appellant had two strikes and faced a potential life sentence, in limine motions had already been heard and decided, jury selection was ongoing, and "there is nothing [in the transcript of the *Marsden* proceeding] that would suggest that the quality of representation is such that it would justify a request for

self[-]representation." The court concluded, "for all of those circumstances, a request for self[-]representation at this point is not only untimely but inappropriate."

Defense counsel immediately advised that appellant "would like to disqualify the judge," acknowledging that counsel was "not aware of any factors pursuant to [section] 170.1." The trial court denied the disqualification request, noting appellant's "fundamental misunderstanding of the court process and the role of the Court."

In response, appellant personally stated, "I don't wish to be represented by [defense counsel] any longer. You can take me upstairs. This is over." The trial court gave appellant a 15-minute break to think further about his request to represent himself. Upon his return to the courtroom, appellant asserted: "I want it on the record, I am present, and I do not want to be represented by [defense counsel] or anyone else. I am not asking for a continuance, so there would be no delay, and the reason for the untimely manner does not come into act [sic]. And if [defense counsel] is to be present, he is to be behind me or under me as an adviser in my constitutional right to represent myself."

### 2. Law

A defendant in a state criminal trial has a federal constitutional right to self-representation. (*Faretta*, *supra*, 422 U.S. at p. 819.) To invoke this unconditional right, the defendant "should make an unequivocal assertion of that right within *a reasonable time prior* to the commencement of trial." (*Windham, supra,* 19 Cal.3d at pp. 127–128, italics added.) When "a motion to proceed *pro se* is timely interposed, a trial court must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might

7

appear to be." (*Id.* at p. 128; see *Faretta*, at pp. 835–836; *People v. Dent* (2003) 30 Cal.4th 213, 217.)

As the California Supreme Court has repeatedly held, however, "*Faretta* motions made on the eve of trial are untimely." (*Lynch, supra,* 50 Cal.4th at p. 722; *People v. Johnson* (2019) 8 Cal.5th 475, 499–500; see, e.g., *People v. Valdez* (2004) 32 Cal.4th 73, 102 [*Faretta* motion made before jury selection untimely].) "When a motion for self-representation is not made in a timely fashion prior to trial, self-representation no longer is a matter of right but is subject to the trial court's discretion." (*Windham, supra,* 19 Cal.3d at p. 128; *People v. Jenkins* (2000) 22 Cal.4th 900, 959.)

In exercising its discretion whether to grant an untimely request for self-representation, the trial court shall inquire into the facts underlying the request and should consider, among any other relevant factors, "[1] the quality of counsel's representation, [2] the defendant's prior proclivity to substitute counsel, [3] the reasons for the request, [4] the length and stage of the proceedings, and [5] the disruption or delay which might reasonably be expected following the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d at pp. 128–129.)

3. <u>Analysis</u>

The trial court did not err in denying appellant's *Faretta* motion as untimely. The motion was not brought within a reasonable time before trial, but after the court had already decided in limine motions, a prospective jury pool had been summoned, jury selection had begun, and jurors were being excused for hardship and cause. (See *People v. Valdez, supra,* 32 Cal.4th at p. 102 [*Faretta* motion made before jury selection untimely]; *People v. Johnson, supra*, 8 Cal.5th at p. 502 [motion brought two weeks before scheduled trial date was untimely]; *People v. Ruiz* (1983) 142 Cal.App.3d 780,

8

791 [*Faretta* motion made six days before trial was untimely]; *People v. Jackson* (2009) 45 Cal.4th 662, 690 [*Faretta* motion untimely when made after "a full day of voir dire" and at the end of preliminary jury instructions].) Whether to grant appellant's motion was therefore in the trial court's discretion.

Appellant fails to show an abuse of discretion. Acknowledging *Windham*, the trial court observed that defense counsel was providing adequate representation and that appellant's concerns about his counsel having tactical control over peremptory challenges had not come to "fruition." Although appellant had not previously substituted counsel, his *Faretta* motion came immediately after the denial of his *Marsden* motion, indicating his *Faretta* motion was likely a negative reaction to the *Marsden* denial and an attempt to circumvent it. (See *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205 (*Scott*) [fact that defendant immediately moved to represent himself after the trial court denied his *Marsden* motion contributed to the conclusion that his request was equivocal].) As for appellant's purported reason for the request, the trial court noted that appellant's sole concern was a belief counsel was excusing jurors without consulting him, which merely reflected appellant's misunderstanding of procedure and counsel's tactics. (See *Scott,* at p. 1207; *People v. Wilkins* (1990) 225 Cal.App.3d 299, 309, fn. 4 [mere disagreement with counsel's trial tactics is an insufficient reason to grant an untimely *Faretta* request].) As to the length and stage of the proceedings, appellant's request was made well after jury voir dire had begun and after great effort had already been made to obtain a jury pool.[4] And while

---

[4] As a "sidenote," the court observed that "jury selection in the time of the COVID pandemic, where we are right now, is particularly difficult. The number of jurors that are willing to participate is incredibly diminished, and so substantial effort has to be made in acquiring a jury." The court also

appellant had not requested a continuance, his courtroom behavior suggested that disruption would follow if he represented himself. Despite the court's explanation of jury selection, appellant responded that he would fire his attorney and represent himself (and ultimately sought to disqualify the judge), indicating he not only misunderstood the court process, he also would likely have difficulty abiding by the court's rules.

Appellant argues that his request was timely because "federal circuit courts have held 'a motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.' " (Quoting *Fritz v. Spaulding* (9th Cir. 1982) 682 F.2d 782, 784.) However, "this is not, and never has been, the law in California." (*People v. Jackson, supra,* 45 Cal.4th at p. 690.) When a defendant has chosen to proceed to trial, a request for self-representation is addressed to the court's discretion. (*Windham, supra*, 19 Cal.3d at p. 128.)

Appellant also cites *People v. Herrera* (1980) 104 Cal.App.3d 167 (*Herrera*) for the proposition that " 'even a *Faretta* motion made on the day of trial is not untimely per se.' " However, *Herrera* did not hold that a day-of-trial *Faretta* motion would always be timely—a notion rejected by our Supreme Court. It assumed a *Faretta* motion was untimely and ruled that the trial court abused its discretion by making "no attempt to comply with the mandate of the *Windham* court" to inquire into the factors underlying the request, so there was no adequate record to review the court's decision. (*Id.* at p. 174.) Here, by contrast, the trial court considered and analyzed the motion under the *Windham* standards.

---

considered the complexity and seriousness of the case, recognizing that appellant faced a life sentence if convicted. The court in *Windham* indicated that its list of factors was not exhaustive. (*Windham, supra,* 19 Cal.3d at pp. 128–129.)

Contrary to the People's depiction in their respondent's brief, the appellate court in *Herrera* did go on to rule that the *Faretta* motion "was not untimely" because the defendant had brought the motion before the jury was selected and had not sought a continuance of the trial. (*Herrera, supra*, 104 Cal.App.3d at pp. 1174–1175.) Whether a *Faretta* request is timely, however, is a matter for the trial court's discretion. The court may consider the totality of the circumstances, including the time between the motion and the scheduled trial date, whether counsel is ready to proceed, the number and availability of witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had an earlier opportunity to assert his right of self-representation. (*People v. Johnson, supra*, 8 Cal.5th at p. 500.) Appellant fails to establish that the trial court in this case abused its discretion in light of these factors.

B. Rejection of Midtrial Plea Agreement

Appellant contends the trial court erred by rejecting a plea bargain he purported to accept pursuant to section 1192.5 after the prosecution presented its evidence. His contention lacks merit.

1. Background

After the prosecution rested its case, defense counsel and the prosecutor stated for the record that appellant was agreeable to a plea bargain that the prosecutor had offered before trial, and that the trial judge had indicated it was too late for a negotiated settlement. The trial judge then explained he had "gone back and forth" on whether to accept the plea and had consulted with the presiding judge. The trial judge concluded that "it comes down to an issue of policy more than anything," since the offer was made before trial began, substantial effort had been expended in bringing the case to trial, the court had spent enormous resources during "COVID" to assemble

11

and swear a jury, extensive resources of the court, counsel, and jury had been expended during the trial, and it would send the wrong message to suggest an offer made before trial could be accepted after all of that effort.

## 2. Court's Discretion to Reject Untimely Plea Bargain

The parties may, pursuant to section 1192.5, enter into a proposed plea agreement that specifies the punishment the defendant will receive.  The plea bargain has no effect, however, until approved by the trial court.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 941; see § 1192.5.)  Whether to approve or reject a plea bargain is within the court's discretion.  (*People v. Morris* (1979) 97 Cal.App.3d 358, 363.)

In exercising this discretion, a trial court may impose reasonable time limitations on proposed plea agreements and decline to approve those that are untimely.  (*People v. Cobb* (1983) 139 Cal.App.3d 578, 584–587 (*Cobb*) [upholding rejection of plea bargain that was untimely under a local rule barring plea bargains after the trial readiness conference].)  Policy interests justifying strict adherence to such a deadline include the proper scheduling of cases and saving the " 'time, difficulty and expense to jurors and witnesses who would otherwise have to be summoned needlessly to attend court sessions.' " (*Id.* at p. 583.)

Here, the trial court considered the proposed plea agreement under the circumstances of appellant's case, concluding it was too late after trial began for appellant to accept a plea offer he could have accepted before the trial began.  The court considered the difficulty in seating a jury, as well as the judicial and party resources expended in trying the matter, including the presentation of the People's witnesses.

Appellant nonetheless relies on the *dissenting* opinion in *Cobb*, which stated that, "regardless of when a plea bargain is presented to a court, the

court must exercise its discretion by considering the bargain in light of the substantive facts of the case; it may not reject the bargain out of hand solely because of the tardiness of its presentation under a local rule." (*Cobb, supra*, 139 Cal.App.3d at p. 589 (dis. opn. of Franson, J.).)

A dissenting opinion, however, has no precedential value. To the extent the dissent reflected one jurist's view that untimeliness, by itself, is not enough to reject a plea bargain, the majority in *Cobb* held otherwise. (*Cobb, supra,* 139 Cal.App.3d at p. 585.) In the 40 years since *Cobb*, no published decision has disagreed with the majority opinion or adopted the idea that a court cannot reject a plea bargain on the ground it was untimely. (See *People v. Loya* (2016) 1 Cal.App.5th 932, 947 [a "court may set a deadline in the pretrial process for the acceptance of a plea bargain to facilitate effective calendar management"].)

In any event, the dissent in *Cobb* is inapposite because the trial court here did not "reject the bargain out of hand solely because of the tardiness of its presentation *under a local rule*." (*Cobb, supra*, 139 Cal.App.3d at p. 589 (dis. opn. of Franson, J.), italics added.) Instead, the trial court based its ruling on the circumstances of appellant's case.

Recognizing there was no pre-existing policy barring plea bargains after the start of trial here, appellant next claims the trial court "decided to create and implement a new local policy prohibiting mid-trial plea agreements." Similarly, he contends the court created a "policy" that "automatically" prohibited midtrial pleas, thus removing the court's discretion.

Nothing in the record supports appellant's assertion. While the trial court used the word "policy" in explaining its ruling, it was obviously referring to matters of public policy, not to a new rule that would apply to

13

every mid-trial plea bargain in every proceeding regardless of the circumstances. To the contrary, the court explicitly considered the difficulty obtaining jurors under the circumstances of the pandemic (and presumably that those jurors, if the plea bargain had been accepted earlier, could have been used to empanel a jury for another case), and the time and resources expended by the court, the parties, the witnesses, and the jury during the trial to that point. As appellant acknowledges, those are factors that apply when a plea is offered midtrial. How those factors might be weighed in any given case is a matter for the trial court's discretion.

In any event, *Cobb* held that even a bright-line rule prohibiting plea bargains after the readiness conference was a proper limitation on the court's discretion to accept or reject a plea bargain. (*Cobb, supra*, 139 Cal.App.3d at p. 581.) Appellant fails to establish error.

### 3. Constitutional Arguments

Appellant contends the rejection of his plea bargain violated his rights to due process and equal protection. His contention fails.

Appellant did not object to the rejection of his plea bargain on constitutional grounds in the trial court, so respondent argues that his challenge is forfeited. (*People v. D'Arcy* (2010) 48 Cal.4th 257, 290.) In his reply brief, appellant counters that "[a] defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights," quoting *People v. Vera* (1997) 15 Cal.4th 269, 276, disapproved on other grounds in *People v. French* (2008) 43 Cal.4th 36, 47, fn. 3.) We need not resolve the forfeiture issue, because we proceed to the merits of the constitutional claims to forestall a contention of ineffective assistance of counsel. (*People v. Lewis* (1990) 50 Cal.3d 262, 282.)

14

Appellant contends his due process rights were violated because there was no "pre-existing local rule" that midtrial plea bargains would be rejected, and because he was not notified that the trial court would "automatically reject a plea agreement once the trial commenced." His argument is meritless. Contrary to his assertion, the court did not "automatically" reject the plea bargain but considered the plea bargain based on the circumstances of the case. Moreover, case law gave appellant ample notice that a court would not be obligated to accept a plea bargain that the defendant waited until mid-trial to accept. (E.g., *Cobb, supra*, 139 Cal.App.3d at pp. 584–587.)[5]

As for his equal protection claim, appellant argues that a policy prohibiting mid-trial plea agreements violates equal protection because similarly situated defendants in other counties can enter into mid-trial plea agreements. More specifically, he argues that he "is similarly situated to a defendant in another county, facing the same charges, who wishes to enter a plea mid-trial," and the court in that other county "would exercise its discretion by considering whether to accept or reject the plea within the context of the facts of the case," but "here, pursuant to the newly created policy by the trial court, no discretion was exercised; rather, the mid-trial plea agreement was automatically and mechanically rejected."

Appellant's argument is untenable. He again relies on the premise that Humboldt County enacted a "policy" of "automatically and mechanically" rejecting mid-trial plea bargains, but there was no such policy. Furthermore, to establish an equal protection violation, a defendant must show "that the state has adopted a classification that affects two or more *similarly situated*

---

[5]     Appellant also argues that the rejection of the plea agreement exclusively on the basis of his late acceptance violated due process. He provides no authority for that proposition.

15

groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530.) Appellant fails to demonstrate that the state (or Humboldt County) has adopted a classification affecting similarly situated groups differently depending on the county. Even if Humboldt County Superior Court had enacted a rule applicable to defendants in its own jurisdiction, it is not responsible for disparities in other counties arising from the actions of other superior courts.[6] Nor has appellant established from the appellate record that defendants in other counties were similarly situated yet treated differently than appellant, or that any other county had a policy allowing midtrial plea bargains at the time of the trial court's decision in this case. (See *Cobb, supra*, 139 Cal.App.3d at pp. 581, 586–587 [noting inconsistencies in plea bargain practices among counties, while rejecting an equal protection argument].) Appellant fails to demonstrate a constitutional violation.

C. <u>Decision Not to Object to Amanda G.'s Testimony</u>

Appellant contends defense counsel was ineffective for failing to object to testimony by Amanda G. that she had been threatened by appellant's brother before trial. He recognizes that evidence of threats against a witness are relevant to the witness's credibility, but he argues that his counsel should have objected that the evidence was unduly prejudicial under Evidence Code section 352 because it suggested that he was behind his brother's threats. His contention has no merit.

---

[6]     Appellant does not assert an equal protection claim on the ground Humboldt County impermissibly distinguished between plea bargains accepted before trial and plea bargains accepted during trial. Defendants who attempt to accept a plea bargain before trial are not similarly situated with those who wait to accept one during trial.

### 1. Background

Amanda G. was called as a witness by the prosecution. At the beginning of the prosecutor's direct examination, the following exchange occurred. "Q. Are you nervous about being here and testifying today? [¶] A. Yeah. [¶] Q. Why is that? [¶] A. Because of, like, my being at risk, you know, like somebody, you know, like attacking me or whatever because of it. [¶] Q. And why do you think that would happen? [¶] A. Because I have seen that happen, you know, with certain cases, you know. [¶] Q. Have you been threatened at all with regard to this case? [¶] A. Um, a little while back a car had driven by, and it was his—[appellant]'s older brother, and he had me come and in and testify and said, 'I'm going to get you' and drove off. [¶] . . . [¶] Q. You are indicating [appellant]'s brother drove by and did some sort of gesture or something and threatened you? [¶] A. Yeah." Defense counsel did not object to Amanda G.'s testimony.

### 2. Law and Analysis

To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's performance was (1) deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) prejudicial, in that there is a reasonable probability the result would have been more favorable to appellant but for counsel's failings. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *In re Jones* (1996) 13 Cal.4th 552, 561.) If the record sheds no light on why counsel acted or failed to act, the claim generally must be rejected unless there is no possible satisfactory explanation for counsel's conduct. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Appellant fails to establish deficient performance by counsel. Evidence that a witness may be afraid to testify due to threats against a witness "may

be admissible whether or not the threat is directly linked to the defendant." (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1087.)  Evidence Code section 352 requires a showing that the probative value was "*substantially* outweighed" by "*substantial* danger of *undue* prejudice" (Evid. Code, § 352, italics added), and appellant presents no authority that the evidence here was sufficiently inflammatory to meet that standard (*People v. Fruits* (2016) 247 Cal.App.4th 188, 205 ["prejudice" referred to in § 352 pertains to " ' " ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues" ' " ' "]).  It is not deficient performance for "counsel to fail to register a meritless objection." (*People v. Jones* (1998) 17 Cal.4th 279, 309.)

Moreover, the absence of objections to evidence reflects "tactical decisions on counsel's part and seldom establish a counsel's incompetence." (*People v. Frierson* (1979) 25 Cal.3d 142, 158.)  Here, trial counsel may have reasonably concluded that the objection would likely be overruled and did not want to draw the jury's attention to the testimony.   (See *People v. Wharton* (1991) 53 Cal.3d 522, 567.)  While appellant argues in his reply brief that his attorney "could easily have asked to approach the bench and lodged the objection outside the presence of the jury," asking to approach the bench and discussing the issue with the court after the prosecutor's question and before the witness's answer, would have drawn undesirable attention to the testimony too.

In any event, appellant fails to demonstrate the prejudice required for an ineffective assistance of counsel claim, as there is no reasonable probability appellant would have obtained a more favorable outcome at trial if counsel had objected and the objection had been sustained.  (*Strickland*, *supra*, 466 U.S. at p. 697.)  The jury convicted appellant only on counts where

Amanda G.'s testimony was corroborated by independent evidence such as appellant's admissions, video surveillance, and police searches. As to those counts, the evidence overwhelmingly proved appellant's guilt.

    D. <u>Decision Not to Object to Testimony About Felony Car Stop</u>

Officer Rodes testified that he conducted a felony car stop on Craig's Honda Pilot on November 8, 2020, because the car had been reported stolen. Appellant contends his lawyer was ineffective for not objecting to the testimony on the ground it was "more prejudicial than probative" under Evidence Code section 352.

Appellant fails to show that counsel's performance was deficient. The evidence that the vehicle had been reported stolen was relevant to Officer Rodes's credibility because it explained why he not only detained appellant but also searched appellant and searched and seized the vehicle. Defense counsel could have reasonably believed that this probative value was not "substantially outweighed" by "substantial danger of undue prejudice" (Evid. Code, § 352), because the fact the vehicle was *reported* stolen did not confirm it was stolen or suggest that appellant stole it, especially when the registered owner (Craig) and appellant knew each other. Furthermore, even if an objection to the evidence (or motion to strike) would have been meritorious, trial counsel could have reasonably concluded it was better not to call attention to the testimony with an objection or motion.

Appellant contends Officer Rodes "could easily have testified to the stop of [appellant] and the search of the vehicle without providing a basis for the stop." In his reply brief, he similarly contends the officer "could easily have" testified that the purpose of the stop was to "investigate a legal violation" rather than that the car was stolen. Both arguments miss the point. The question is not whether the officer could have testified to something else, but

whether appellant has shown that his counsel should have objected to the question or testimony that *was* given, and that counsel lacked an adequate reason not to object. Appellant fails in that regard.

Furthermore, appellant has not shown that the absence of an objection was prejudicial. As mentioned, the jury convicted appellant only on counts he admitted or were corroborated by video surveillance and supported by overwhelming evidence. There is no reasonable probability the jury would not have convicted him on those counts merely because it was unaware the vehicle he was later seen driving was reported to be stolen.

E. Cumulative Prejudice

Appellant contends the "foregoing" errors resulted in cumulative prejudice. Because we have found no error, appellant's claim of cumulative prejudice fails too.

F. Section 654

At sentencing, the trial court imposed a term of 25 years to life on appellant's burglary conviction (count 2) and a concurrent four-year term on his felon-in-possession conviction (count 5). Appellant contends that because the jury did not convict him of robbery or felony assault, his felonious intent in committing the burglary must have been to possess a firearm, so his punishment for the firearm possession should have been stayed pursuant to section 654. He is incorrect.

Under section 654, " '[a]n act or omission which is made punishable in different ways by different provisions [of law] may be punished under either of such provisions, but in no case [shall the act or omission] be punished under more than one' " provision. The statute prohibits punishment for two crimes arising from a single, indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207–1208.) Whether a course of conduct is indivisible

for purposes of section 654 depends on the intent and objective of the actor. (*Ibid.*)

If all the defendant's offenses are incidental to one objective, the defendant may be punished for only one of them. (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1112; see *People v. Islas* (2012) 210 Cal.App.4th 116, 130 [defendant cannot be punished for both a burglary and the felony he intended in perpetrating the burglary].) If the defendant entertained multiple criminal objectives, independent of each other, the defendant may be punished for each violation. (*People v. DeVaughn,* at p. 1112.) The issue is thus whether substantial evidence supports the conclusion that the defendant entertained multiple criminal objectives. (*Id.* at p. 1113; *People v. Nelson* (1989) 211 Cal.App.3d 634, 638 [whether or not trial court makes an express finding].)

Here, the jury was instructed that a "burglary was committed if the defendant entered with the intent to commit theft *or* robbery *or* assault with a semi-automatic firearm *or* possession of a firearm after having been convicted of a felony." (Italics added.) The jury was therefore authorized to convict appellant of burglary based on any of those criminal objectives, and there was evidence to support the conclusion that appellant entered the motel room to accomplish each of them.

In particular, substantial evidence supported the conclusion that appellant entered the motel room with an intent to commit robbery. The surveillance video showed appellant and his cohort crouching outside the motel room, wearing sunglasses, face masks, and hoods. Appellant had his hand in his jacket as if he were pulling out a gun. In a call from jail, appellant "admit[ed] to *going in there looking for* [his] pistol and [his] clothes" and beating up J.L. (Italics added.) Appellant attacked J.L. as soon as

appellant entered the room. Because substantial evidence supported the conclusion that appellant entered the motel room harboring an intent to rob—a felonious intent *besides* possessing the firearm—appellant could be punished for both the burglary conviction and the conviction for his possession of a firearm.

Appellant contends the acquittal on the charge of assault with a semiautomatic firearm and the mistrial on the robbery charge preclude a finding that he intended to perpetrate those felonies when he entered the motel room. Not so. In the first place, the count 1 robbery charge was for robbery *in concert with two or more* other persons (§ 213(a)(1)(A)); the jury may have been undecided on that count because they were unsure if Craig had been a knowing participant, not because they thought appellant had not committed a robbery. Furthermore, although the jury did not find that appellant *completed* those crimes, it also did not find that appellant lacked an intent to commit them when he entered the motel room. Appellant fails to demonstrate error.

G. *Romero* Motion to Strike Prior Strikes (§ 1385, subd. (a))

Appellant received a sentence of 25 years to life on his burglary conviction pursuant to the three strikes law. He contends the court erred in denying his motion to strike one or both of his prior strike convictions pursuant to section 1385, subdivision (a) and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). His contention has no merit.

The trial court may strike a prior strike allegation "in furtherance of justice." (§ 1385, subd. (a); see *Romero, supra,* 13 Cal.4th at p. 504.) To do so, the court must determine that justice would be furthered "in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent convictions, and the particulars of his background,

character, and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Because the intent of the three strikes law is to ensure longer prison sentences for career criminals, it is only in the "extraordinary" circumstance that a defendant who has committed numerous offenses will fall outside the spirit of the scheme. (*People v. Strong* (2001) 87 Cal.App.4th 328, 332.)

We review the trial court's decision for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 371.) "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Here, in denying appellant's motion, the trial court outlined its thorough consideration of the issue in a passage covering over eight pages of reporter's transcript. Despite liking appellant and trying "very diligently to come to consider a sentence short of what is proposed in the probation officer's report," the court concluded that striking the priors would not be appropriate given appellant's substantial criminal history and the fact that the current offense indicated "a planning, discussion, a premeditation, . . . not something that simply [appellant] fell into," as well as a "fascination that [appellant] seems to show towards firearms." The court noted appellant's "numerous prior felony convictions, numerous violations on probation, numerous violations of post release community supervision, trips to state prison, and now a third prior strike offense."

Appellant argues that one of his two prior strike convictions should have been stricken because they arose from the same act against the same victim. (See, e.g., *People v. Vargas* (2014) 59 Cal.4th 635, 638–639.) However, the trial court explicitly found that the underlying acts—burglary

23

and making criminal threats—were separate strikes for purposes of the three strikes law. Appellant fails to demonstrate otherwise.

In addition, appellant contends the trial court abused its discretion because his prior convictions *besides* the two prior strikes were "either drug-related offenses, many offenses that would now be considered misdemeanors, or minor non-violent offenses," so the trial court's characterization of his criminal history "paint[ed] a picture that is much harsher than the reality." But appellant proves how extensive his criminal history was by listing it in a footnote. Besides his two prior strike convictions, appellant was convicted in 2011 of transportation/sale of narcotics (Health & Saf. Code, § 11352, subd. (a)); in 2012 of possession or purchase for sale of narcotics (*id.*, § 11351); in 2013 of possession of narcotics (*id.*, § 11350; also in 2013 of possession of narcotics (*id.*, § 11350); also in 2013 of flight from a pursuing peace officer (Veh. Code, § 2800.1, subd. (a)); and in 2016 of vehicle theft (*id.*, § 10851, subd. (a)) and driving on a suspended license (*id.*, § 14601.1, subd. (a)). He also suffered a juvenile disposition for unlawful possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and a probation violation in that case.

Appellant fails to demonstrate error in the denial of his motion to strike his prior strike convictions.[7]

---

[7] Appellant contends the trial court erred in not striking "both prior serious felony enhancements" (§ 667, subdivision (a)). As appellant acknowledges, his written *Romero* motion did not explicitly ask to strike the priors for purposes of a section 667 enhancement. His argument is therefore forfeited. Furthermore, appellant fails to demonstrate ineffective assistance of counsel: even if counsel had made the request, there is no reasonable probability that the trial court would have stricken the priors for purposes of the proposed section 667, subdivision (a) enhancements, given its decision not to strike the priors for purposes of the three strikes law. To the extent appellant challenges the failure to dismiss the enhancements on other

H.  Serious Felony Enhancements (§ 667, subd. (a))

In addition to the 25-year-to-life term for burglary (based on the prior strikes for burglary and criminal threats), the trial court imposed a consecutive five-year term for one of those prior serious felony convictions and a concurrent five-year term for the other, pursuant to section 667, subdivision (a).  In his supplemental opening brief, appellant argues that because both felonies underlying the enhancements were charged in the same prior case, the court "erred by ordering one of the enhancements to run concurrently instead of striking one of the enhancements."  As respondent acknowledges, appellant is correct.

Section 667, subdivision (a) applies to any "person convicted of a serious felony who previously has been convicted of a serious felony" and establishes "a five-year enhancement for each such prior conviction on charges *brought and tried separately*."  (Italics added.  See *In re Harris* (1989) 49 Cal.3d 131, 136.)  Because "the *finding* that two serious priors existed was itself erroneous," one of the prior serious felony findings must be vacated.  (*People v. Jones* (2015) 236 Cal.App.4th 1411, 1417, italics in original.)  We will vacate the prior serious felony enhancement that the trial court had ordered to run concurrently.[8]

I.  Serious Felony Enhancements – Dismissal (§ 1385, subd. (c))

Appellant also contends the trial court should have dismissed both of the prior serious felony enhancements under section 1385, subdivision (c).

---

grounds, we address those issues next.

[8]    The trial court erred in imposing this enhancement concurrently, because "[t]he terms of the present offense and *each* enhancement shall run consecutively."  (§ 667, subd. (a).  Italics added.)  The error is moot because we are vacating the enhancement.

Appellant forfeited this claim, and his assertion of ineffective assistance is meritless.

Section 1385, subdivision (c) provides: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so . . . . (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(1)–(2).)

As relevant here, "subparagraphs (A) to (I)" of section 1385, subdivision (c)(2) include the following: "(C) The application of an enhancement could result in a sentence over 20 years. In this instance, the enhancement shall be dismissed. [¶] . . . [¶] (H) The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2); see Stats. 2022, ch. 58, § 15; see also Stats. 2021, ch. 721, § 1.) Appellant contends the convictions underlying his serious prior felony enhancements were older than five years (§ 1385, subd. (c)(2)(C)), his sentence in the case was over 20 years (§ 1385, subd. (c)(2)(H)), and the trial court did not make an express finding that dismissal would endanger public safety.

1. Forfeiture

At the sentencing hearing in July 2022, appellant did not ask the trial court to dismiss the serious felony enhancement allegation or strike the punishment based on section 1385, subdivision (c). He therefore forfeited his

26

argument on appeal.  (*People v. Carmony*, *supra*, 33 Cal.4th 367, 375–376 [failure to request dismissal under § 1385, subd. (a), forfeits the issue]; *People v. Scott* (1994) 9 Cal.4th 331, 351–354 [claims involving exercise of sentencing discretion cannot be raised for the first time on appeal].)

### 2. Ineffective Assistance

Appellant contends counsel was ineffective for not arguing that section 1385, subdivision (c) required dismissal of the prior serious felony enhancements.  He fails to demonstrate any reasonable probability of a different outcome if the argument had been made.

Section 1385, subdivision (c)(2)(C) provides that an enhancement "shall be dismissed" if "[t]he application of [the] enhancement would *result* in a sentence over 20 years."  (Italics added.)  Here, appellant was sentenced to an indeterminate term of 25 years to life for burglary and five consecutive years for the serious felony enhancement.  Section 669 provides:  "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first."  Thus, appellant is deemed to serve his five-year enhancement before his 25 years to life term, and the sentence length beyond 20 years is not the "result" of the enhancement.  (§ 1385, subd. (c)(2)(C).)  Section 1385, subdivision (c)(2)(C) does not apply here.

Section 1385, subdivision (c)(2)(H) pertains if "[t]he enhancement is based on a prior conviction that is over five years old."  Appellant's prior offenses occurred in October 2015, and the current offense occurred just over five years later in November 2020.  Section 1385, subdivision (c)(2)(H), however, does not require automatic dismissal of an enhancement.

Indeed, as appellant recognizes, it has been repeatedly held that trial courts retain discretion over the decision to strike enhancements, even in the

context of section 1385, subdivision (c)(2)(C) and its language that the enhancement "shall be dismissed." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 297; *People v. Anderson* (2023) 88 Cal.App.5th 233, 241, review granted Apr. 19, 2023, S278786; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098 (*Ortiz*), review granted Apr. 12, 2023, S278894; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15–21; *People v. Walker* (2022) 86 Cal.App.5th 386, 396 (*Walker*), review granted Mar. 22, 2023, S278309.) In other words, nothing in subdivision (c) of section 1385 *requires* a trial court to dismiss an enhancement solely because there exists a mitigating factor enumerated in subdivision (c)(2) of the statute.[9]

There is a conflict in the case law, currently before our Supreme Court, as to the extent of the trial court's discretion not to dismiss an enhancement despite proof of a mitigating circumstance enumerated in section 1385, subdivision (c)(2). In *Walker, supra,* 86 Cal.App.5th at pp. 396–398, the court ruled that the mitigating circumstance results in a rebuttable presumption favoring dismissal, which can be overcome by a finding that dismissal would endanger public safety. In *Ortiz, supra,* 87 Cal.App.5th at pp. 1097–1098, the court concluded that the mitigating circumstance is afforded "great weight" under subdivision (c)(2), but it can be outweighed by any sufficient countervailing factors the court might consider in its exercise of discretion, which might, but need not, include endangerment of public safety.

We agree with *Ortiz*. Section 1385, subdivision (c)(1) provides that an enhancement shall be dismissed only "if it is in the furtherance of justice to

---

[9]     Appellant argues that *Mendoza* and *Lipscomb* were wrongly decided. We are not persuaded. In any event, as to the mitigating circumstance based on the age of the priors under section 1385, subdivision (c)(2)(H)—the only mitigating circumstance available here—appellant acknowledges that the circumstance does not result in an automatic dismissal of the enhancements.

28

do so," a broad concept that embraces the court's exercise of discretion based on a full range of relevant factors. A specific concern with public safety is introduced in section 1385, subdivision (c)(2), which provides that a mitigating circumstance weighs greatly in favor of dismissal "unless the court finds that dismissal of the enhancement would endanger public safety." The subdivision therefore relieves the trial court (or prohibits the trial court) from weighing the circumstance greatly in favor of dismissal if the dismissal would endanger the public, but it does not strip the trial court of its broader discretion to conclude, in light of other countervailing information, that dismissal of the enhancement would not be in "furtherance of justice" under section 1385, subdivision (c)(1).

Here, given the trial court's careful consideration of appellant's *Romero* motion and its findings that the prior strikes should not be stricken under section 1385, subdivision (a) due to appellant's criminal history (and fascination with firearms), appellant fails to show a reasonable probability that the court would have stricken either serious felony enhancement under section 1385, subdivision (c). Indeed, appellant barely qualified for a mitigating circumstance under section 1385, subdivision (c)(2)(H) because his prior strike convictions were just over five years old. Therefore, even if defense counsel should have sought dismissal of the enhancements under section 1385, subdivision (c), appellant has not established the prejudice required for an ineffective assistance of counsel claim. Moreover, as discussed in the preceding section of this opinion, one of the enhancements is being stricken because the enhancements are based on priors brought and tried in the same case. We find no reasonable probability that the trial court

would have stricken more than one of the enhancements under section 1385, subdivision (c). Appellant fails to demonstrate prejudicial error.[10]

## III. DISPOSITION

We vacate the sentence enhancement that the trial court imposed concurrently under section 664, subdivision (a). In all other respects, the judgment is affirmed. The trial court shall enter a new abstract of judgment consistent with this opinion.

---

[10] Even if *Walker* stated the correct rule, and a mitigating circumstance could be rebutted only if dismissal would endanger public safety, we would still conclude that appellant has not established ineffective assistance of counsel. Appellant's criminal history was substantial, his prior strikes and current convictions constituted violent felonies or crimes that risked or threatened the personal safety of others, the trial court found that appellant had premeditated his attack, and the court remarked on appellant's "fascination" with firearms, noting he was drawn to them "like a moth to the light," which "is just disaster waiting to happen." While appellant argues that dismissing an enhancement would not pose a danger to public safety because he was already sentenced to an indeterminate life term, he fails to show a reasonable probability that the court would have dismissed the enhancements under either *Walker* or *Ortiz.*

CHOU, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*People v. Shirley* / A165769